IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Atrium Medical Center, et al., )
)
       Plaintiffs, ) Case No. 1:12-CV-89
)
vs. )
)
Kathleen Sebelius, Secretary )
of Health and Human Services, )
)
       Defendant. )

O R D E R

This matter is before the Court on cross-motions for summary judgment filed by Plaintiff Atrium Medical Center, et al. (Doc. No. 23) and Defendant Kathleen Sebelius, Secretary of the Department of Health and Human Services (Doc. No. 25). For the reasons that follow, Defendant's motion for summary judgment is well-taken and is **GRANTED**; Plaintiffs' motion for summary judgment is not well-taken and is **DENIED.**

I. Background

The dispute in this case concerns Medicare Part A reimbursement payments under Medicare's prospective payment systems ("PPS") to hospitals for inpatient medical services. The Medicare regulations establish a complicated system for calculating reimbursement payments, one component of which is the cost of labor. The Seventh Circuit succinctly described the process in Adventist GlenOaks Hosp. v. Sebelius, 663 F.3d 939 (7th Cir. 2011):

> In simplified terms the PPS formula operates as follows: The starting point is a standardized base-payment amount that reflects the average cost per discharge for all inpatient hospital services across the nation. See 42 U.S.C. § 1395ww(d)(2)(A)-(D). This amount consists of a labor-related component and a nonlabor component. See id. § 1395ww(d)(3)(E)(I); 42 C.F.R. § 412.64(h)(2).

>The Secretary first multiplies the labor-related component by a hospital's "wage index," a factor designed to account for variations in labor costs across the country. See 42 U.S.C. § 1395ww(d)(3)(E)(I); 42 C.F.R. § 412.63(x). She then adds this amount to the nonlabor component. Finally, she multiplies that sum by the weight assigned to the Diagnostic Related Group ("DRG") that best describes the treatment administered for the specific discharge being reimbursed—for example, "heart transplant" or "allergic reaction." See generally 42 U.S.C. § 1395ww(d)(2); see also Methodist Hosp., 38 F.3d at 1227 (summarizing the PPS formula).
>
>The dispute here concerns the "wage index" factor in the PPS formula. To assign wage indices to hospitals, the Secretary uses geographic areas called Metropolitan Statistical Areas ("MSAs"), which are developed and periodically revised by the Office of Management and Budget. See 42 C.F.R. §§ 412.63(b), 412.64(b). Hospitals annually report their employees' wages and hours to the Secretary. From these reports the Secretary computes the average hourly wage within each MSA, as well as the national average hourly wage. The wage index for an MSA is the ratio of the MSA's average hourly wage to the national average. For example, if the average hourly wage in an MSA is 20 percent higher than the national average, its wage index is 1.2. Thus, the wages and hours reported by a hospital directly affect the wage index for all other hospitals in its MSA. And a higher wage index results in greater reimbursements.

Id. at 941-42 (internal footnote omitted).

Each fiscal year, hospitals submit worksheets with their claimed reimbursable expenses to a fiscal intermediary appointed by the Secretary. The fiscal intermediary reviews the worksheets and will allow or disallow costs as indicated by the reimbursement manual published by the Secretary. Hospitals have the opportunity to appeal disallowed costs to the Provider Reimbursement Review Board ("PRRB"). 42 U.S.C. § 1395oo(a). The Administrator of the Centers for Medicare & Medicaid Services ("CMS") has discretion whether to review the decision of the PRRB. 42 U.S.C. § 1395oo(f)(1) ("A decision of the Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision."). The Administrator's

decision represents the final decision of the Secretary.  Cove Assoc. Joint Venture v. Sebelius, 848 F. Supp.2d 13, 16 (D.D.C. 2012) ("The Secretary has delegated her authority to review PRRB decisions to the Administrator of CMS.").  A hospital may appeal the Secretary's decision in federal district court via the Administrative Procedures Act.

Similar to the situation in Adventist GlenOaks, the dispute in this case concerns the Secretary's determination of the wage index and, more specifically, the number of hours that the Secretary includes in calculating the index.  "The Secretary requires hospitals to report all 'paid hours," including 'paid lunch hours, overtime hours, paid holiday, vacation and sick leave hours, paid time-off hours, and hours associated with severance pay." Adventist, 663 F.3d at 942 (quoting CENTERS FOR MEDICARE & MEDICAID SERVICES, PROVIDER REIMBURSEMENT MANUAL-PART II § 3605.2 (2005)) ("PRM")  (internal brackets omitted).  As the Adventist Court indicated, when more hours are included, the denominator of the formula increases and the wage index decreases, with a corresponding decrease in Medicare reimbursements.

Two different categories of "phantom hours," as Plaintiffs call them, are at issue here.  One category concerns short-term disability benefits.  Instead of providing short-term disability benefits through an insurance carrier or a self-funded insurance plan, at least one of the hospital plaintiffs in this case, St. Elizabeth's Medical Center ("SEMC"), pays short-term disability benefits directly out of its operating funds.[1]  When an employee qualifies for short-term disability benefits, SEMC pays the employee's full

---

[1] It is undisputed, however, that this is not a self-funded insurance plan.

3

salary through the payroll system.  The payroll system attributes hours to the employee in order to calculate the benefits due.  As the CMS Administrator's decision indicates, this method of providing short-term disability benefits is fundamentally the same as providing an extended period of paid sick leave.  See Doc. No. 24-3, at 7.  The Secretary includes the hours the payroll system uses to calculate the short-term disability payments in the wage index.  However, had SEMC provided short-term disability payments through an insurance carrier, the premiums paid would have been considered a "wage-related" fringe benefit and not included in the wage index.  Plaintiffs contend that since employees who received short-term disability benefits through the payroll system did not actually work any hours for the period they were on short-term disability, the Secretary should treat these payments the same as she treats insurance premiums and deduct the hours from the wage index.

     Also in dispute here are so-called "Baylor Plan" hours.  In order to induce employees to work certain undesirable shifts, hospitals will credit employees with more hours than they actually worked instead of paying an hourly shift premium.  The example given in this case is that a Baylor Plan employee will work two 12 hour shifts but be paid as if he or she actually worked a total of 32 hours.  This method apparently allows the hospitals to maintain a pretext, for whatever reason, about paying a lower average hourly wage.  In any event, Plaintiffs call the 8 additional Baylor Plan hours "bonus hours" and contend that they should not be included in the wage index calculation.  However, because the Baylor Plan hours are recorded and paid through the payroll system, the Secretary treats these figurative hours literally and includes them in the wage index.

4

In this case, the PRRB sustained the hospital's request to subtract Baylor Plan hours and hours associated with short-term disability payments from their worksheets and, hence, from the wage index denominator.  The PRRB determined that all the short-term disability payments should be treated as wage-related costs to ensure consistent treatment across all providers.  The PRRB reasoned that a hospital's method of paying short-term disability benefits does not alter the nature or type of the cost.  Therefore, the PRRB concluded, the CMS program instructions require treating short-term disability benefits which are paid through the payroll system as "wage related" costs and not as "hours paid."  Doc. No. 24-3, at 5.   The PRRB determined also that the Baylor Plan hours were bonus pay because they were not worked hours and were only utilized by the hospitals so the payroll system could determine the proper payment amount.  The PRRB noted that the Reimbursement Manual instructs that no hours are required for bonus pay; thus, it concluded that paid hours related to bonus pay should be excluded. Id. at 6.

On its own motion, the CMS Administrator decided to review the PRRB's decision and reversed.  The Administrator first found that short-term disability payments paid through the hospital's payroll system do not meet the PRM's requirements for treatment as either wage-related premiums paid to an insurance carrier or as a self-insurance fund.  Since these payments cannot be treated as insurance premiums or as self-insurance under the PRM, the Administrator concluded that the costs and hours associated with these payments must be considered paid time off, and, therefore, must be included in the wage index.  The Administrator rejected the hospitals' contention that treating the short-term disability payments as paid time off results in inconsistent

5

treatment.  The Administrator noted that the fiscal intermediary had treated several other hospitals who paid short-term disability payments through the payroll system the same as it treated the hospitals in this case.  To the contrary, the Administrator concluded, treating the hospitals in this case differently from those other hospitals would result in inconsistent treatment of short-term disability payments and, consequently, would result in a distortion of the wage index.  Doc. No. 24-3, at 11-14.  Therefore, the Administrator determined that the fiscal intermediary properly included the hours reported for short-term disability payments in the wage index.  Id. at 14.

     Regarding the Baylor Plan hours, the Administrator noted that it has been CMS's longstanding policy to use paid hours rather than hours worked for purposes of calculating the wage index because paid hours more accurately reflect the basis of a salary.  The Administrator then noted that a salary includes paid leave as well as non-productive time for which the employee receives a salary.  The Administrator thought that using paid hours instead of hours worked is especially important for Baylor Plan hours because part of the reason additional hours were recorded by the hospital was to allow the employee to receive benefits, something disallowed to part-time employees.  The Administrator also noted that it treated Baylor Plan hours for all hospitals in the same manner.  Thus, treating the Baylor Plan hours differently for the hospitals in this case would result in a distortion of the wage index.  Therefore, the Administrator concluded that the Baylor Plan hours were properly included in the wage index.  Id. at 14-15.

The hospitals filed a timely complaint for review of the Administrator's decision. The parties have filed cross-motions for summary judgment which are now ready for disposition.

## II. Standard of Review

Although the parties have captioned their pleadings as motions for summary judgment, the Court does not in fact employ the Rule 56 standard in reviewing an agency's final decision under the Administrative Procedures Act. Rather, in a case involving Medicare reimbursements, such as this one, the scope of judicial review is narrow. Battle Creek Health Sys. v. Leavitt, 498 F.3d 401, 408 (6th Cir. 2007). As the Court in Leavitt explained:

> The Supreme Court has established a two-step process for reviewing an agency's interpretation of a statute that it administers. Chevron U.S.A., Inc. v. Nat. Resources Defense Council, Inc., 467 U.S. 837, 104 S .Ct. 2778, 81 L.Ed.2d 694 (1984). "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Jewish Hosp., Inc. v. Sec'y of Health & Human Servs., 19 F.3d 270, 273 (6th Cir. 1994) (emphasis in original) (citing CenTra, Inc. v. United States, 953 F.2d 1051 (6th Cir.1992)). The Supreme Court has explained that "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear legislative intent." Chevron, 467 U.S. at 843 n. 9, 104 S.Ct. 2778.
>
> Second, if we determine that Congress has not directly addressed the precise question at issue, that is, that the statute is silent or ambiguous on the specific issue, we must determine "whether the agency's answer is based on a permissible construction of the statute." Jewish Hosp., Inc., 19 F.3d at 273. In assessing whether the agency's construction is permissible, we "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading [we] would have reached if the question initially had arisen in a judicial proceeding." Id. at 273-74 (citing Chevron, 467 U.S. at 843 n. 11, 104 S. Ct. 2778). In fact, the agency's construction is entitled to deference unless "arbitrary, capricious, or manifestly contrary to the statute." Chevron, 467 U.S. at 844, 104 S. Ct. 2778.

7

>Our review of an agency's interpretation of its own regulations is highly deferential. Pursuant to 42 U.S.C. § 1395 oo(f)(1), a decision by the [CMS] is subject to review under the [APA], 5 U.S.C. § 706(2)(A). Under the APA, we review an agency decision to see whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accord with law." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S. Ct. 2381, 129 L.Ed.2d 405 (1994). Under the APA, an agency's interpretation of a regulation must be given controlling weight unless it is "plainly erroneous or inconsistent with the regulation." Id.
>
>. . .
>
>However, "[i]nterpretations such as those in opinion letters-like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law-do not warrant Chevron-style deference." Christensen v. Harris County, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). Thus, "[i]nterpretative guidance from administrative agencies that is not the product of formal, notice-and-comment rulemaking is entitled to respect 'to the extent that the interpretations have the power to persuade.'" Bank of New York v. Janowick, 470 F.3d 264, 269 (6th Cir. 2006) (quoting Christensen, 529 U.S. at 587, 120 S.Ct. 1655) (internal quotations and citations omitted). See also Clark Reg'l Med. Ctr., 314 F.3d at 248 ("The PRM is 'the prototypical example of an interpretive rule issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.'") (quoting Shalala v. Guernsey Mem'l Hosp., 514 U.S. 87, 99, 115 S. Ct. 1232, 131 L.Ed.2d 106 (1995)); St. Mary's Hosp. of Troy v. Blue Cross & Blue Shield Ass'n, 788 F.2d 888, 890 (2d Cir. 1986) (PRM is an "interpretive" source entitled to persuasive weight).

Id. at 408-09 (internal footnote omitted). Under the arbitrary and capricious standard, the reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 378 (1989) (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)).

An agency's decision is "arbitrary and capricious" when the agency:

>has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so

8

implausible that it could not be ascribed to a difference in view or the product of agency expertise. Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 127 S. Ct. 2518, 2529, 168 L.Ed.2d 467 (2007) (quoting Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L.Ed.2d 443 (1983)). The reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given." Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43, 103 S. Ct. 2856. However, "[e]ven when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may be reasonably discerned." Alaska Dep't of Env't Conservation v. EPA, 540 U.S. 461, 497, 124 S. Ct. 983, 157 L. Ed.2d 967 (2004).

Kentucky Waterways Alliance v. Johnson, 540 F.3d 466, 473-74 (6th Cir. 2008).

### III. Analysis

It should be noted first that Plaintiffs in this case do not contest any of the Secretary's factual findings. Plaintiff's challenge, rather, the Secretary's interpretation of the Medicare Act to require the inclusion in the wage index of all hours paid through the hospital's payroll system regardless of whether the employee actually worked the hours recorded. In other words, the situation in this case is essentially indistinguishable from Adventist, which involved the Secretary's inclusion of paid lunch breaks, i.e., non-productive paid hours, in the wage index. The Court starts its analysis, therefore, with the relevant statute.

Regarding wages, wage-related reimbursements, and the wage index, the Medicare Act directs the Secretary as follows:

> [T]he Secretary shall adjust the proportion, (as estimated by the Secretary from time to time) of hospitals' costs which are attributable to wages and wage-related costs, of the DRG prospective payment rates computed under subparagraph (D) for area differences in hospital wage levels by a factor (established by the Secretary) reflecting the relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level. Not later than October 1, 1990, and October 1, 1993 (and at least every 12 months thereafter), the Secretary shall update the factor under the preceding sentence on the basis of a survey conducted by the Secretary (and updated as appropriate) of the wages

9

> and wage-related costs of subsection (d) hospitals in the United States. Not less often than once every 3 years the Secretary (through such survey or otherwise) shall measure the earnings and paid hours of employment by occupational category and shall exclude data with respect to the wages and wage-related costs incurred in furnishing skilled nursing facility services. Any adjustments or updates made under this subparagraph for a fiscal year (beginning with fiscal year 1991) shall be made in a manner that assures that the aggregate payments under this subsection in the fiscal year are not greater or less than those that would have been made in the year without such adjustment. The Secretary shall apply the previous sentence for any period as if the amendments made by section 403(a)(1) of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 and the amendments made by section 10324(a)(1) of the Patient Protection and Affordable Care Act had not been enacted.

42 U.S.C. § 1395ww(d)(3)(E).  The purpose of this section is to ensure that the reimbursement rate is adjusted to reflect geographical variations in labor costs. Methodist Hosp. of Sacramento v. Shalala, 38 F.3d 1225, 1227 (D.C. Cir. 1994).  While § 1395ww(d)(3)(E) requires the Secretary to develop and update a wage index, it does not otherwise instruct the Secretary how this should be done. Id. at 1230.  Instead, Congress delegated this authority to the Secretary. Id.  Thus, the Secretary's interpretation of § 1395ww(d)(3) and the rules implementing this section are entitled to substantial deference by the Court. Alliance for Community Media v. F.C.C., 529 F.3d 763, 776 (6th Cir. 2008).

      Since at least 1993, the Secretary has interpreted the wage index to require use of paid hours, rather than hours worked, as the best indicator of a hospital's wage costs, and, to that end, has always included covered leave periods, such as annual leave and sick leave, in the index. See Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2004 Rates, 68 F.R. 45346-01, 45396 (Aug. 1, 2003).  In publishing the 1993 regulation, the Secretary stated:

> We have always used total paid hours because they more appropriately reflect what is included in total salary. For example, if an individual takes paid sick leave, the corresponding hours need to be included in the total hours. This is appropriate because salaries are based on a specified work period (such as 40 hours per week) that includes any time during that period covered by paid leave, as well as any non-productive time for which the employee receives a salary (such as a paid lunch period). The definition for total hours will be clarified in the cost reporting instructions to specify that total hours mean total paid hours.

See Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 1994 Rates, 58 F.R. 46270-01, 46299 (Sept. 1, 1993).

It is clear to the Court that the Secretary's decision to include short-term disability payments and Baylor Plan hours in the wage index is not arbitrary and capricious, and, therefore, must be sustained. As indicated above, while the hospitals choose to pay short-disability payments through their payroll systems, and denominate them short-term disability benefits, this method of compensating an employee for his or her paid time off is the functional equivalent of an extended period of sick leave. The Secretary has always included hours for paid sick leave in the wage index and the hospitals do not contend that this decision was arbitrary and capricious. It is not, therefore, arbitrary and capricious for the Secretary to treat the functional equivalent of sick leave as if it were sick leave and include it in the index. If the hospitals had wanted to have their short-disability payments treated as a wage-related expense, and hence excluded from the index, then they should have either purchased short-term disability insurance from a carrier or established a bona-fide self-insurance plan. Their business decision not to utilize these accepted methods to pay short-term disability benefits yet exclude the cost from the wage index does not make the Secretary's adverse decision arbitrary and capricious.

The Secretary's decision to include Baylor Plan hours in the wage index is equally clear cut.  While the hospitals call the extra Baylor Plan hours "bonus hours," and thus subject to exclusion from the wage index, the fact of the matter is that they treat these employees as if they had actually worked 32 hours (or however many additional hours comprise the incentive) so that they can claim to pay a lower hourly wage for that job.  That is all well and good.  But it is hardly arbitrary and capricious for the Secretary to treat these employees the same way the hospitals do, i.e., as if they had actually worked 32 hours.  The hospitals could have decided to pay a higher hourly wage to induce employees to work undesirable shifts, which in turn would have increased the wage index, but they decided not to.  Again, however, the hospital's business decision to inflate the hours worked instead of the hourly rate does not make the Secretary's decision and interpretation of the statute arbitrary and capricious.

Plaintiffs contend that in this case the Secretary has taken a position regarding bonus hours which is inconsistent from the position she took and prevailed upon in Adventist GlenOaks.  In Adventist GlenOaks, in arguing for the exclusion of paid lunch hours from the wage index, the hospitals noted that the Secretary permits hospitals to deduct "phantom hours" used to award bonus pay.  In other words, in order to pay a bonus to employees, a hospital may use its payroll system to credit the employee with a certain number of hours not actually worked in order to calculate and pay the bonus.  Another example given was that some hospitals pay overtime pay by increasing the number of hours in the payroll system rather than by increasing the hourly rate.  For instance, time and half pay might be paid by crediting the employee with 1.5 hours in the payroll system for every 1 hour of overtime actually worked.  The Secretary permits

the hospitals to deduct the fictional hours used to calculate and pay bonuses and overtime from the wage index. The hospitals tried to analogize these fictional bonus and overtime hours to the paid lunch hours on the basis that the employees were paid for hours not actually worked. See 663 F.3d at 944. In opposition, the Secretary argued that it was reasonable to allow the hospitals to deduct fictional bonus and overtime hours because they do not correspond to any real time period in which the employee did not work. In contrast, the Secretary argued, paid lunch hours are appropriately included in the wage because they correspond with a real time period. See Doc. No. 24-7, at 3-5. Plaintiffs now argue that the Secretary's position in this case is inconsistent with her position in Adventist GlenOaks because, like bonus and overtime hours, there are no actual time periods associated with the fictional Baylor Plan and short-term disability payments at issue in this case. Therefore, Plaintiffs argue that the Secretary should be judicially estopped from arguing for their inclusion in the wage index in this case.

"Judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." United States v. Owens, 54 F.3d 271, 275 (6th Cir. 1995) (internal quotation marks omitted). Courts, however, will apply judicial estoppel against the government sparingly, and then only if "it conducts what appears to be a knowing assault upon the integrity of the judicial system." Id. (quoting Reynolds v. Commissioner of Internal Rev., 861 F.2d 469, 474 (6th Cir.1988) ) (internal quotation marks omitted). The Court hardly sees anything in the Secretary's position in this case that amounts to "a knowing assault upon the integrity of the judicial system." Therefore, judicial estoppel would not apply

13

for that reason alone.  In any event, the Secretary's position in this case is actually consistent with her position in Adventist GlenOaks.  Like the paid lunch hours in Adventist GlenOaks, the short-term disability payments at issue here compensate the employee for an actual time period for which he or she did not work.  Stated another way, the hours for which the employee was compensated while on disability leave were not fictional at all - he or she just simply did not work during the compensated time period.  Somewhat similarly, although not an exact correlation, the "phantom hours" the hospitals use to pay Baylor Plan hours also correspond with a time period the employee actually works and for which he or she is compensated.  This, as indicated in Adventist GlenOaks, is in contrast to fictional bonus hours, which do not correspond to any real time period for which the employee receives compensation.  See 633 F.3d at 944.  Consequently, the Court does not find any inconsistencies, at least none warranting application of judicial estoppel, between the Secretary's position in this case and her position in Adventist GlenOaks.

<u>Conclusion</u>

In conclusion, as the Secretary accurately points out, § 1395ww(d)(3)(E) directs her to measure "paid hours" in developing the wage index. The hospitals in this case compensate their employees for short-term disability benefits and shift incentives on the basis of paid hours of work. Consequently, the Secretary's inclusion of these hours in the wage index is fully consistent with the statutory mandate.

Accordingly, the Secretary's motion for summary judgment is well-taken and is **GRANTED**. Plaintiff's motion for summary judgment is not well-taken and is **DENIED.**


       **IT IS SO ORDERED**


<u>Date January 8, 2013</u>                  <u>  s/Sandra S. Beckwith  </u>
                                                    Sandra S. Beckwith
                                   Senior United States District Judge